## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| Sigfredo Rubio, Andrea Shields, Xin Wang, Jami S. Oliver, Laura Shimko, and Margaret Rizzo, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>   v.<br><br>ZF-TRW Automotive Holdings Corp., TRW Automotive U.S. LLC, FCA US LLC, American Honda Motor Co., Inc., and Toyota Motor Sales, U.S.A., Inc.,<br><br>         Defendants. | Civil Action No.<br><br>**JURY TRIAL DEMANDED**<br><br>**CLASS ACTION** |

## CLASS ACTION COMPLAINT

### I.    INTRODUCTION

1.    This case presents another example of an airbag manufacturer and automakers concealing a deadly airbag performance defect, this time in the Class Vehicles.[1]   Plaintiffs bring this case, seeking damages and equitable relief,

---

[1] "Class Vehicles" refers to the following affected vehicles: 2014-2019 Acura RLX; 2014-2019 Acura RLX Hybrid; 2012-2014 Acura TL; 2015-2017 Acura TLX; 2012-2014 Acura TSX; 2014 Acura TSX Sport Wagon; 2012-2013 Acura TSX Sportswagon; 2010-2011 Dodge Nitro, 2010 Dodge Ram 3500, 2012-2019 Fiat 500 2013-2015 Honda Accord; 2014-2015 Honda Accord Hybrid; 2012-2015

1

individually and on behalf of the other members of the below-defined nationwide and statewide classes they respectively seek to represent (collectively, the "Class" or "Classes"), each of whom purchased or leased one or more Class Vehicles.

2.     Airbags are a safety component whose failure affects occupant safety. Drivers and passengers reasonably expect airbag deployment in collisions. When functioning properly, airbags are designed to save lives.

3.     The National Highway Traffic Safety Administration ("NHTSA") estimates some 12.5 million vehicles may contain a defective Airbag Control Unit ("ACU") designed and manufactured by ZF-TRW Automotive Holdings Corp. ("ZF-TRW") and TRW Automotive U.S. LLC ("TRW Automotive") (collectively, the "TRW Defendants") and supplied to FCA US LLC, ("FCA"), American Honda Motor Co., Inc. ("Honda"), and Toyota Motor Sales, U.S.A., Inc. ("Toyota") (collectively with the TRW Defendants, "Defendants") and other vehicle manufacturers, including Hyundai Motor America ("Hyundai"), Kia Motors America ("Kia"), and Mitsubishi Motors North America, Inc. ("Mitsubishi")

---

Honda Civic; 2012-2015 Honda Civic GX; 2012-2015 Honda Civic Hybrid; 2012-2015 Honda Civic SI; 2012-2016 Honda CR-V; 2012-2017 Honda Fit; 2013-2014 Honda Fit EV; 2012-2014 Honda Ridgeline; 2015-2017 Jeep Compass; 2010-2012 Jeep Liberty; 2015-2017 Jeep Patriot; 2010-2018 Jeep Wrangler; 2009-2012 Ram 1500; 2010-2012 Ram 2500; 2010-2012 Ram 3500; 2011-2012 Ram 4500; and 2011-2012 Ram 5500; 2012-2018 Toyota Avalon; 2013-2018 Toyota Avalon Hybrid; 2011-2019 Toyota Corolla; 2017-2018 Toyota Corolla iM; 2011-2013 Toyota Corolla Matrix; 2012-2017 Toyota Sequoia; 2012-2019 Toyota Tacoma; and 2012-2017 Toyota Tundra.

(together, the "Vehicle Manufacturers"). The defect in the ACU occurs because the application-specific integrated circuit ("ASIC") breaks down by excess electrical energy generated during the crash. This ASIC defect then causes a failure in the ACU preventing deployment of the airbags and seat belt pretensioners.

4.     ACUs are designed and manufactured to sense a vehicle crash, determine whether airbag deployment is necessary, and deploy appropriate airbags and other supplemental restraints where needed. The ACU contains an electronic component—an application specific integrated circuit ("ASIC")—which monitors signals from other crash sensors located in the Class Vehicles. If the ASIC fails, the ACU will not operate properly.

5.     As a result of an electrical overstress ("EOS") condition that causes the malfunction of the ASIC in the ACUs manufactured by the TRW Defendants (the "ACU Defect"), the airbags equipped in the Class Vehicles (defined below) do not properly deploy during a crash. The ACU Defect exposes Plaintiffs and the other Class members to the serious and life-threatening safety risk that their Class Vehicle airbags could fail to deploy during an accident, resulting in injury or death.

6.     Personal injury and wrongful death lawsuits have been filed against the TRW Defendants and/or the Vehicle Manufacturers alleging that airbags failed to deploy in accidents as a result of the ACU Defect. Notwithstanding knowledge of the ACU Defect, the TRW Defendants has continued to manufacture and sell

the defective ACUs, resulting numerous injuries and deaths. The Vehicle Manufacturers have continued to equip the Class Vehicles with airbag systems containing the ACU Defect and sell and lease the Class Vehicles, without disclosing the ACU Defect and its corresponding safety risks to Plaintiffs and the other Class members.

7.    NHTSA's Office of Defects Investigation ("NHTSA ODI") opened a preliminary evaluation ("PE") investigation in March 2018 into the ACU Defect based on six frontal crashes, reported via Early Warning Reporting between 2012 and 2017, where airbags did not deploy.[2] These crashes resulted in six injuries and four deaths.

8.    The PE investigation focused on certain Hyundai and Kia vehicles containing the ACU Defect. NHTSA ODI identified ZF-TRW as the supplier of the defective ACUs, putting the Vehicle Manufacturers on notice of the ACU Defect. A NHTSA ODI described the defect this way: "[f]ailure of the air bag control unit may prevent the frontal air bags from deploying in the event of a crash."[3]

---

[1]    Exhibit A, NHTSA, ODI Resume, Investigation EA 18-003 Mar. 16, 2018, https://static.nhtsa.gov/odi/inv/2018/INOA-PE18003-9810.PDF.

[2]    *Id.*

4

9.    In February 2018, Hyundai reported that "post-collision inspections of the air bag control units (ACUs) showing that an electrical overstress condition (EOS) of an ACU electronic component occurred in three of the crashes, and that the fourth ACU is under evaluation for the same concern."[4] Hyundai stated it had "not identified a remedy for this recall, and state[d] that the cause of the EOS is being investigated with the ACU supplier, ZF-TRW."[5]

10.    NHTSA's Office of Defects Investigation on April 19, 2019, upgraded its PE investigation into the ACU Defect to an Engineering Analysis that focused on the TRW Defendants and Vehicle Manufacturers, as well as certain other car manufacturers.[6] Per NHTSA, the TRW Defendants supplied the defective ACUs to the Vehicle Manufacturers.[7] NTSHA ODI estimates that 12.3 million vehicles contain the ACU Defect.

11.    Plaintiffs, individually and on behalf of the other members of the Classes, assert claims against Defendants for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, fraudulent concealment, breach of express

---

[3]    *Id.*

[4]    *Id.*

[5]    Exhibit B, NHTSA, ODI Resume, Investigation EA 19-001, Apr. 19, 2019, https://static.nhtsa.gov/odi/inv/2019/INOA-EA19001-2536.PDF.

[6]    *See id.*

and implied warranties, unjust enrichment and state consumer fraud/unfair trade practices.

12.    Consumers never expect to purchase or lease a Class Vehicle containing a concealed ACU Defect that prevents airbag and seatbelt pretensioner deployment during a collision. The ACU Defect creates a safety risk and is material to Plaintiffs and the other members of the Classes because when they purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would be free from defects and contain an ACU and airbag system that properly functioned. Had Defendants disclosed the ACU Defect, Plaintiffs and the other members of the Classes would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

13.    Defendants knowingly, actively, and affirmatively omitted and/or concealed the existence of the ACU Defect from Plaintiffs and the other members of the Classes. Knowledge and information regarding the ACU Defect and the associated safety risk was in the exclusive and superior possession of Defendants, and was not disclosed to Plaintiffs and the other members of the Classes, who could not reasonably discover the defect through due diligence. Through pre-production testing, design failure mode analysis, wrongful death and personal injury lawsuits, post-collision inspections, vehicle owner questionnaires, and NHTSA investigations, *inter alia*, Defendants were aware of the ACU Defect and

fraudulently concealed the defect from Plaintiffs and the other members of the Classes.

14.    Faced with this knowledge, the TRW Defendants continued selling defective ACUs and the Vehicle Manufacturers continued selling Class Vehicles equipped with airbag systems containing the ACU Defect. Defendants failed to disclose the existence of the ACU Defect to Plaintiffs and the other members of the Classes and have not remedied the ACU Defect and/or compensated Plaintiffs or the other members of the Classes for this material defect. The Vehicle Manufacturer Defendants have not issued recalls for the Class Vehicles containing the ACU Defect, but have instead wrongfully and intentionally concealed the ACU Defect from Plaintiffs and the other members of the Classes.

15.    Due to Defendants' conduct, Plaintiffs and the other members of the Classes have been harmed and are entitled to actual damages, including damages for diagnosis, repair and/or replacement costs, damages for the diminished value of their vehicles, compensatory, statutory and punitive damages, attorneys' fees, costs, restitution, and injunctive and declaratory relief.

## II.    <u>JURISDICTION AND VENUE</u>

16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than

100 members of the Classes, members of the Classes (as defined below) are citizens of states different from Defendants, and greater than two-thirds of the members of the Classes reside in states other than the states in which Defendants are citizens. This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367 and jurisdiction over the Magnuson-Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

17.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because FCA and the TRW Defendants maintain their corporate headquarters in this District, because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, including the design and manufacture of the defective ACUs, and because Defendants conduct a substantial amount of business in this District. Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction in the District and venue is proper.

### III.   PARTIES

**A.    Plaintiffs**

18.     Sigfredo Rubio is a resident of Birmingham, Alabama.

19.     Mr. Rubio owns a 2015 Acura TLX. Mr. Rubio purchased his Acura on May 4, 2015 from McConnell Acura in Montgomery, Alabama.

20.     Honda and the TRW Defendants failed to disclose the ACU Defect to Mr. Rubio before he purchased his Acura, despite their knowledge of the defect, and Mr. Rubio, therefore, purchased his Acura with the incorrect understanding that it would be a reliable and safe personal vehicle.

21.     Andrea Shields is a resident of Montgomery, Alabama.

22.     Ms. Shields owns a 2014 Toyota Corolla. Ms. Shields purchased her Toyota in 2014 from Rheinhardt Toyota in Montgomery, Alabama.

23.     Toyota and the TRW Defendants failed to disclose the ACU Defect to Ms. Shields before she purchased her Toyota, despite their knowledge of the defect, and Ms. Shields, therefore, purchased her Toyota with the incorrect understanding that it would be a reliable and safe personal vehicle.

24.     Xin Wang is a resident of North Potomac, Maryland.

25.     Ms. Wang owns a 2015 Honda Civic LX.  Ms. Wang purchased her Honda in mid-March 2015 from Criswell Honda in Germantown, Maryland.

26.     Honda and the TRW Defendants failed to disclose the ACU Defect to Ms. Wang before she purchased her Honda, despite their knowledge of the defect, and Ms. Wang, therefore, purchased her Honda with the incorrect understanding that it would be a reliable and safe personal vehicle.

27.     Jami S. Oliver is a resident of Plain City, Ohio.

28.    Ms. Oliver owns a 2012 Acura TSX. Mrs. Oliver purchased her Acura on October 8, 2014 from Acura Columbus in Dublin, Ohio.

29.    Honda and the TRW Defendants failed to disclose the ACU Defect to Ms. Oliver before she purchased her Acura, despite their knowledge of the defect, and Ms. Oliver, therefore, purchased her Acura with the incorrect understanding that it would be a reliable and safe personal vehicle.

30.    Ms. Oliver recently received a recall notice for her airbag.

31.    Laura Shimko is a resident of Madison, Ohio.

32.    Ms. Shimko owns a 2017 Fiat 500. Ms. Shimko purchased her Fiat on August 14, 2017 from Ganley Mentor in Mentor, Ohio.

33.    FCA and the TRW Defendants failed to disclose the ACU Defect to Ms. Shimko before she purchased her Fiat, despite their knowledge of the defect, and Ms. Shimko, therefore, purchased her Fiat with the incorrect understanding that it would be a reliable and safe personal vehicle.

34.    Margaret Rizzo is a resident of Fairmont, West Virginia.

35.    Ms. Rizzo owns a 2012 Honda CR-V. Ms. Rizzo purchased her Honda in 2014 from Urse Honda in Bridgeport, West Virginia.

36.    Honda and the TRW Defendants failed to disclose the ACU Defect to Ms. Rizzo before she purchased her Honda, despite Defendants' knowledge of the

defect, and Ms. Rizzo, therefore, purchased her Honda with the incorrect understanding that it would be a reliable and safe personal vehicle.

## B.    ACU Manufacturer Defendants

37.    Defendant ZF-TRW is a Delaware corporation, with its corporate headquarters located in Livonia, Michigan.

38.    Defendant TRW Automotive is a Delaware limited liability company, with its corporate headquarters located in Livonia, Michigan.

39.    The TRW Defendants design, manufacture, and sell automotive systems, modules, and components to automotive original equipment manufacturers, including airbag systems. The TRW Defendants engage in interstate commerce by selling automotive systems throughout the United States, including within this District.

40.    At all times relevant to this action, the TRW Defendants and/or their agents manufactured, distributed, sold, and warranted airbag systems containing the ACU Defect, as described herein, throughout the United States.

41.    On information and belief, at all times relevant to this action, the TRW Defendants made decisions related to design, manufacturing, marketing, sales, warranties, and recalls of the airbag systems containing the ACU Defect from their Livonia, Michigan headquarters, which are located within this District.

C.    **Vehicle Manufacturer Defendants**

42.    Defendant FCA is a Delaware limited liability company, with its corporate headquarters located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.

43.    FCA designs, engineers, manufactures, markets and/or sells vehicles under the Chrysler, Dodge, Jeep, Ram, and Fiat brands in Michigan and throughout the United States, through its network of authorized motor vehicle dealers. FCA engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

44.    Defendant Honda is a California corporation, with its corporate headquarters located at 1919 Torrance Boulevard, Torrance, California 90501.

45.    Honda designs, engineers, manufactures, markets and/or sells vehicles under the Honda and Acura brands in Michigan and throughout the United States, through its network of authorized motor vehicle dealers. Honda engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

46.    Defendant Toyota is a California corporation, with its corporate headquarters located at 6565 Headquarters Drive, Plano, Texas 75024.

47.    Toyota designs, engineers, manufactures, markets and/or sells vehicles under the Toyota brand in Michigan and throughout the United States,

through its network of authorized motor vehicle dealers. Toyota engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

48. FCA, Honda, and Toyota together are referred to herein as the "Vehicle Manufacturer Defendants." At all times relevant to this action, the Vehicle Manufacturer Defendants and/or their agents manufactured, distributed, sold, leased, and warranted the Class Vehicles throughout the United States.

## IV. FACTUAL ALLEGATIONS

### A. The Class Vehicles

49. The affected airbag systems containing the ACU Defect include those manufactured by the TRW Defendants and subject to investigation by NHTSA ODI. These airbag systems contain ACUs that suffer from EOS—an electrical overstress condition that causes electric components in the ACUs to malfunction—resulting in failure of airbags and other supplemental restraints to deploy when Class Vehicles suffer an impact. As a result of the ACU Defect, the airbag systems pose unreasonably dangerous safety risks to Plaintiffs and the other members of the Classes, including the risk of injury and death. All of the Class Vehicles are equipped with an airbag system containing the ACU Defect.

50. The TRW Defendants supplied the Vehicle Manufacturers with the defective ACUs and the Vehicle Manufacturers equipped the Class Vehicles with

airbag systems containing the ACU Defect, which Defendants did not disclose to Plaintiffs or the other members of the Classes.

51. Despite their knowledge of the ACU Defect and corresponding safety risks, the Vehicle Manufacturers have not recalled the Class Vehicles.

## B. The ACU Defect

52. Class Vehicles' airbag systems contain ACUs that sense vehicle crashes and evaluate whether airbag deployment is necessary in the event of an impact.[8] The defective ACU is located in the Class Vehicles' passenger compartments and is electrically connected to crash sensors located at the front of the Class Vehicles. *Id.* Based on the results of the sensor, the ACU will deploy the appropriate airbag and other safety restraints to protect drivers and passengers from an accident or impact. *Id.*

53. The Class Vehicles' ACU contain an electronic component—an application specific integrated circuit ("ASIC")—which monitors signals from other crash sensors located in the vehicle. ASIC failure means the ACU will not operate properly and airbags and other supplemental restraints will not deploy when needed. *See* NHTSA ODI Resume, Investigation EA 19-001.

54. Per NHTSA ODI, the Class Vehicles' ACUs suffer electrical overstress due to harmful electrical signals, which then damages the ASIC. *Id.* This

---

[8] *See* Exhibit B, NHTSA ODI Resume, Investigation EA 19-001.

causes the ACUs to stop working, and as a result, the proper airbag and supplemental restraints are not being deployed during a crash—subjecting Plaintiffs and the other members of the Classes to injury and death.

55.    By design the ACU contains electrical wiring and circuitry intended to prevent transmission of harmful signals that may damage the ASIC. *Id.* Upon information and belief, the ACUs in the Class Vehicles do not contain sufficient ASIC protection to avoid electrical overstress, which results in failure of the airbags to deploy when needed.

56.    NHTSA opened an initial investigation on March 16, 2018 into the ACU Defect, which, at that time, had caused front air bags to fail to deploy in numerous crashes, resulting in at least six injuries and four deaths.[9] The PE investigation identified certain vehicles manufactured by Kia and Hyundai, which contained defective ACUs manufactured by the TRW Defendants. *Id.*

57.    Contemporaneously, NHTSA ODI indicated certain Kia vehicles "also use similar ACU's supplied by ZF-TRW" and there was "a prior recall, 16V-668 where EOS appeared to be a root cause of air bag non-deployment in significant frontal crashes in certain Fiat Chrysler vehicles."

58.    Even though the PE investigation focused on certain Hyundai and Kia vehicles containing the ACU Defect, NHTSA ODI identified ZF-TRW as the

---

[9] Exhibit A, NHTSA ODI Resume, Investigation EA 18-003.

supplier of the defective ACUs, putting the Vehicle Manufacturers on notice of the ACU Defect.

59.     Following the PE investigation, Kia and Hyundai instituted recalls of certain vehicles affected by the ACU Defect, including 2010-2013 Kia Fortes; 2010-2013 Kia Forte Koups; 2011-2013 Kia Optimas; 2011-2013 Kia Optima Hybrids; 2011-2012 Kia Sedonas; 2011-2012 Hyundai Sonatas; and 2011-2013 Hyundai Sonata Hybrids.[10]

60.     Kia's recall describes the ACU Defect this way: "The recalled vehicles are equipped with an Advanced Airbag System ("AAS"). The airbag control unit ("ACU") in these vehicles may be susceptible to electrical overstress ("EOS") during certain frontal crash events."[11] The Kia recall further described the cause of the defect as "the ASIC component within the subject ACUs may be susceptible to EOS due to inadequate circuit protection" and explained the safety risk as follows: "[i]f the ASIC becomes damaged, the front airbags and seatbelt pretensioners may not deploy in certain frontal crashes where deployment may be necessary, thereby increasing the risk of injury."[12]

---

[10] *See* Exhibits C and D, Kia and Hyundai recalls.

[11] *See* Exhibit C, Kia recall.

[12] *Id.*

16

61.     FCA recalled other vehicles for the ACU Defect in September 2016, disclosing that the EOS condition resulted in a failure of the ASIC, which caused airbag non-deployment.[13] Despite FCA's September 2016 recall, neither it nor any other Vehicle Manufacturer Defendant has recalled the Class Vehicles.

62.     NHTSA, on April 19, 2019, elevated its investigation of the ACU Defect to an Engineering Analysis. NHTSA takes this step after certain criteria are met signifying the need for an enhanced investigation.[14]

63.     An Engineering Analysis entails "a more detailed and complete analysis of the character and scope of the alleged defect," building on the information collected during the initial investigation. *Id.* As a result of an Engineering Analysis, NHTSA may recommend a safety recall or work with a manufacturer to issue a safety recall. *Id.*

64.     NHTSAs accelerated investigation into the ACU Defect expanded the scope of affected vehicles to include the Class Vehicles, *inter alia*, and include the TRW Defendants in the investigation.[15]

---

[13] *See* Exhibit E, FCA recall.

[14] *See* NHTSA, *Motor Vehicle Defects and Safety Recalls: What Every Vehicle Owner Should Know*, https://www-odi.nhtsa.dot.gov/recalls/ documents/MVDefectsandRecalls.pdf (Revised Aug. 2017).

[15] Exhibit B, NHTSA ODI Resume, Investigation EA 19-001.

65.    NHTSA ODI "identified two substantial frontal crash events (one fatal) involving Toyota products where EOS is suspected as the likely cause of the non-deployments."[16] As explained by NHTSA ODI, "[t]he crashes involved a MY 2018 and a MY 2019 Corolla equipped with the subject ACU that incorporated higher levels of ASIC protection" where "both ACUs were found to be non-communicative (meaning the ACU could not be read with an Event Data Recorder) after the crash, a condition found in other cases where EOS occurred with other OEMs."[17]

66.    The ACU Defect poses a significant safety risk to Plaintiffs and the other Class members and NHTSA has documented numerous crashes causing injuries, including several fatalities. *Id.*[18]

67.    The defective airbag systems were designed, engineered and manufactured by the TRW Defendants with design and/or manufacturing flaws that cause the ACU Defect and causes the airbags and other supplemental restraints to not deploy in a crash. By designing, manufacturing, assembling, inspecting,

---

[16] Exhibit B, NHTSA ODI Resume, Investigation EA 19-001.

[17] *Id.*

[18] *See also* Tom Krisher, *US Expands Probe Into ZF-TRW Air Bag Failures to 12.3M Vehicles*, NBC LOS ANGELES (Apr. 23, 2019, 6:36 AM), https://www.nbclos angeles.com/news/national-international/US-Expands-ZF-TRW-Air-Bag-Failure- Probe-508942951.html.

distributing, and/or selling defective ACUs and/or Class Vehicles equipped with airbag systems containing the ACU Defect, Defendants rendered the Class Vehicles unsafe for their intended use and purpose.

68.    Upon information and belief, the ACU Defect was caused, among other things, by the TRW Defendants' design, manufacture or assembly of the ACUs.

69.    As alleged herein, Plaintiffs and the other members of the Classes unknowingly purchased or leased Class Vehicles that contain the ACU Defect and suffered diminished market value, did not receive the benefit of their bargain, and suffered other damages related to their purchase or lease of the Class Vehicles as a direct result of Defendants' misrepresentations and/or omissions regarding the standard, quality or grade of the Class Vehicles and/or the existence of the ACU Defect and its associated safety risks. The fact that the Class Vehicles suffer from the ACU Defect is material to Plaintiffs and the other members of the Classes because it diminishes the value of the Class Vehicles and exposes drivers and passengers of the Class Vehicles to unreasonable safety risks.

70.    As a result of Defendants' material omissions, including their failure to disclose the presence of the ACU Defect in the Class Vehicles, Defendants have caused Plaintiffs and the other members of the Classes to suffer actual damages,

including but not limited to out-of-pocket expenses and the diminished value of their vehicles.

## C.  Defendants' Knowledge of the ACU Defect and Associated Safety Risks

71.  Defendants fraudulently, intentionally, and/or recklessly concealed from Plaintiffs and the other members of the Classes the ACU Defect even though Defendants knew or should have known that defects in design, manufacturing, materials and/or workmanship were causing the ACU Defect if Defendants had adequately tested the airbag systems in the Class Vehicles.

72.  Knowledge and information regarding the ACU Defect were in the exclusive and superior possession of Defendants, and that information was not provided to Plaintiffs and the other members of the Classes. Based on pre-production testing, preproduction design or failure mode analysis, production design or failure mode analysis, post-collision inspections, NHTSA investigations, wrongful death and personal injury lawsuits, and early consumer complaints made to Defendants' network of vehicle manufacturers, *inter alia*, Defendants were aware (or should have been aware) of the ACU Defect in the Class Vehicles and fraudulently concealed the ACU Defect and safety risks from Plaintiffs and the other members of the Classes.

73.  Defendants fraudulently, intentionally, negligently and/or recklessly omitted and concealed from Plaintiffs  and the other members of the Classes the

ACU Defect even though Defendants knew or should have known of design and/or manufacturing defects in the airbag systems in the Class Vehicles.

74.     Defendants knew, or should have known, that the ACU Defect and associated safety risks were material to owners and lessees of the Class Vehicles and were not known or reasonably discoverable by Plaintiffs and the other members of the Classes before they purchased or leased Class Vehicles, or before the warranties on their Class Vehicles expired.

75.     Defendants gained their knowledge of the ACU Defect through sources not available to Plaintiffs and the other members of the Classes. Notwithstanding Defendants' exclusive and superior knowledge of the ACU Defect, the Vehicle Manufacturer Defendants failed to disclose the defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles containing the ACU Defect.

## V.     TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

### A.     Discovery Rule Tolling

76.     Plaintiffs could not have discovered through reasonable diligence that their Class Vehicles was defective within the time period of any applicable statutes of limitation.

77.     Among other things, neither Plaintiffs nor the other Class members knew or could have known that the Class Vehicles contain the ACU Defect which

diminishes the value of the Class Vehicles and exposes drivers and passengers of the Class Vehicles to unreasonable safety risks.

## B.    Fraudulent Concealment Tolling

78.    Throughout the time period relevant to this action, Defendants concealed from and failed to disclose to Plaintiffs and the other Class members vital information about the potentially deadly defect described herein.   Indeed, Defendants kept Plaintiffs and the other Class members ignorant of vital information essential to the pursuit of their claims, and as a result, neither Plaintiffs nor the other Class members could have discovered the ACU Defect, even upon reasonable exercise of diligence.

79.    Specifically, Defendants have known that the ACU will not operate properly and airbags and other supplemental restraints will not deploy when needed.

80.    Despite their knowledge of these defects, Defendants failed to disclose, concealed, and continue to conceal, this critical information from Plaintiffs and the other members of the Class even though, at any point in time, it could have done so through individual correspondence, media release, or any other means.

81.    Plaintiffs and the other Class members justifiably relied on Defendants to disclose these material defects in the Class Vehicles that they

purchased or leased, as such defects were hidden and not discoverable through reasonable efforts by Plaintiffs and the other Class members.

82.    Thus, the running of all applicable statutes of limitation have been tolled and suspended with respect to any claims that Plaintiffs and the other Class members have sustained as a result of the defects by virtue of the fraudulent concealment doctrine.

**C.    Estoppel**

83.    Defendants were under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the Class Vehicle.

84.    Defendants knowingly failed to disclose or concealed the true nature, quality, and character of the Class Vehicles for consumers.

85.    Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

## VI.    CLASS ACTION ALLEGATIONS

86.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and/or (b)(3) on behalf of the following Classes:

> **Nationwide Class**: All persons or entities in the United States who purchased or leased a Class Vehicle (the "Nationwide Class").

> **Alabama Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Alabama (the "Alabama Class").

**Maryland Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Maryland (the "Maryland Class").

**Ohio Class**: All persons or entities who purchased or leased a Class Vehicle in the State of Ohio (the "Ohio Class").

**West Virginia Class**: All persons or entities who purchased or leased a Class Vehicle in the State of West Virginia (the "West Virginia Class").

87.     Excluded from the Classes are Defendants and their parents, subsidiaries and corporate affiliates. Plaintiffs reserve the right to revise the definitions of the Classes based upon subsequently discovered information and reserve the right to establish additional classes where appropriate.

88.     The Classes are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are at least thousands of proposed members of the Classes throughout the United States.

89.     Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes. The common and predominating questions of law and fact include, but are not limited to:

- Whether the Class Vehicles contain the ACU Defect;

- Whether Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

- Whether Defendants violated the Ohio Consumer Sales Practices Act Ohio Rev. Code Ann. §§ 1345.01, *et seq.*;

24

- Whether the Vehicle Manufacturer Defendants were unjustly enriched by their conduct;

- Whether the ACU Defect is a design defect and/or a defect in material, manufacturing and/or workmanship;

- Whether the ACU Defect in the Class Vehicles presents a safety risk;

- Whether and when Defendants knew or should have known about the ACU Defect;

- Whether Defendants knew or should have known that the ACU Defect in Class Vehicles presents a safety risk;

- Whether Defendants had a duty to disclose the ACU Defect;

- Whether Defendants breached their duty to disclose the ACU Defect;

- Whether Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts concerning the standard, quality or grade of the Class Vehicles and/or the ACU Defect;

- Whether Defendants made material omissions concerning the standard, quality or grade of the Class Vehicles and/or the ACU Defect;

- Whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Class Vehicle;

- Whether Defendants actively concealed material facts from Plaintiffs and the other members of the Classes;

- Whether Defendants breached their implied warranties to Plaintiffs and the other members of the Classes;

25

- Whether the Vehicle Manufacturer Defendants breached their express warranties to Plaintiffs and the other members of the Classes;

- Whether the other members of the Classes would pay less for a Class Vehicle if Defendants, at the time of purchase or lease, disclosed the ACU Defect and/or associated safety risks;

- Whether Plaintiffs and the other members of the Classes would have purchased or leased a Class Vehicle if Defendants, at the time of purchase or lease, disclosed the ACU Defect and/or associated safety risks;

- Whether damages, restitution, equitable, injunctive, compulsory or other relief is warranted.

90.    Plaintiffs' claims are typical of the claims of the Classes Plaintiffs seek to represent. As alleged herein, Plaintiffs and the Classes sustained damages arising out of the same unlawful actions and conduct by Defendants.

91.    Plaintiffs are willing and prepared to serve the Classes in a representative capacity with all of the obligations and duties material thereto.

92.    Plaintiffs will fairly and adequately protect the interests of the Classes and have no interests adverse to or in conflict with the interests of the other members of the Classes.

93.    Plaintiffs' interests are co-extensive with and are not antagonistic to those of absent members within the Classes. Plaintiffs will undertake to represent and protect the interests of absent members within the Classes and will vigorously prosecute this action.

94.     Plaintiffs have engaged the services of the undersigned counsel. Counsel is experienced in complex litigation, will adequately prosecute this action and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Classes.

95.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

96.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

97.     The Classes may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

98.     The interests of members of the Classes in individually controlling the prosecution of separate actions is theoretical and not practical. The Classes have a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

# VII.   CLAIMS FOR RELIEF

**A.**   **Claim Brought on Behalf of the Nationwide Class**

### COUNT I
### Violation of the Magnuson-Moss Warranty Act ("MMWA"),
### M
### (Against the Vehicle Manufacturer Defendants)

99.   Plaintiffs Rubio, Shields, Wang, Oliver, Shimko, and Rizzo ("Plaintiffs," for purposes of the Nationwide Class's claims) incorporate and re-allege paragraphs 1-98 as though fully set forth herein.

100.   Plaintiffs bring this Count individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count) against the Vehicle Manufacturer Defendants.

101.   Plaintiffs satisfy the MMWA jurisdictional requirement because they allege diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

102.   Plaintiffs and the other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

103.   The Vehicle Manufacturer Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

104.   The ACUs and Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

105.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

106.   Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give the Vehicle Manufacturer Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

107.   The Vehicle Manufacturer Defendants provided Plaintiffs and the other members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6). Under warranties provided to Plaintiffs and the other members of the Class, the Vehicle Manufacturer Defendants promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the ACU Defect, at no cost to owners and lessees of the Class Vehicles. As alleged herein, the Vehicle Manufacturer Defendants breached these warranties.

108.   The Vehicle Manufacturer Defendants provided Plaintiffs and the other Class members with implied warranties, including an implied warranty of merchantability, in connection with the purchase or lease of the Class Vehicles, whereby the Vehicle Manufacturer Defendants warranted that the ACUs and Class

Vehicles were fit for their ordinary purpose as safe vehicles. The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

109.   The Vehicle Manufacturer Defendants breached these implied warranties by failing to disclose and fraudulently concealing information regarding the standard, quality or grade of the Class Vehicles and/or the presence of the ACU Defect and corresponding safety risks. Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that fails to operate as represented by the Vehicle Manufacturer Defendants and presents a safety risk, and therefore, the Class Vehicles are not fit for their ordinary purpose.

110.   Affording the Vehicle Manufacturer Defendants a reasonable opportunity to cure their breaches of warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, the Vehicle Manufacturer Defendants knew, or were reckless in not knowing, of the material omissions concerning the standard, quality or grade of the Class Vehicles and the presence of the ACU Defect and corresponding safety risks, but failed to repair or replace the ACU Defect and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford the Vehicle Manufacturer Defendants a

reasonable opportunity to cure their breaches of warranties is excused and thereby deemed satisfied.

111.   Plaintiffs and the other members of the Class experienced the ACU Defect within the warranty periods but the Vehicle Manufacturer Defendants failed to inform Plaintiffs and the other members of the Class of the existence of the ACU Defect and associated safety risk, and failed to provide a suitable remedy or repair of the ACU Defect free of charge within a reasonable time.

112.   Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased defective products without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods are also unconscionable and inadequate to protect Plaintiffs and the other members of the Class. Among other things, Plaintiffs and the other members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants, on the one hand, and Plaintiffs and the other members of the Class, on the other hand, and the Vehicle Manufacturer Defendants knew or

should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

113.   Plaintiffs and each of the other members of the Class have had sufficient direct dealings with either the Vehicle Manufacturer Defendants or their agents (dealerships) to establish privity of contract.

114.   Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Class are intended third-party beneficiaries of contracts between the Vehicle Manufacturer Defendants and their dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the ACU Defect.

115.   Plaintiffs and the other members of the Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to the Vehicle Manufacturer Defendants. Thus, Plaintiffs and the other members of the Class have not re-accepted their Class Vehicles by retaining them.

116.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum

of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

117.   Plaintiffs, individually and on behalf of the other members of the Class, seek equitable relief, restitution, and all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**B.      Claims Brought on Behalf of the Alabama Class**

**COUNT II**
**Breach of Express Warranty**
**Ala. Code §§ 7-2-313 and 7-2A-210**
**(Against the Vehicle Manufacturer Defendants)**

118.   Plaintiffs Rubio and Shields ("Plaintiffs," for purposes of the Alabama Class's claims) incorporate and re-allege paragraphs 1-98 as though fully set forth herein.

119.   Plaintiffs bring this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count) against the Vehicle Manufacturer Defendants.

120.   The Vehicle Manufacturer Defendants are and were at all relevant times merchants with respect to the Class Vehicles.

121.   The Vehicle Manufacturer Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period.

33

122.   The Vehicle Manufacturer Defendants' express warranties formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with the ACU Defect.

123.   The Vehicle Manufacturer Defendants breached their express warranties to repair defects in materials and workmanship within the Class Vehicles.  The Vehicle Manufacturer Defendants have not repaired, and have been unable to repair, the Class Vehicles' materials and workmanship defects.

124.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect through numerous complaints filed against them directly and through their dealers, as well as their own internal engineering knowledge.

125.   Furthermore, the express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because the Vehicle Manufacturer Defendants have failed and/or has refused to adequately provide the promised remedies within a reasonable time.

126.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

127.   Also, as alleged in more detail herein, at the time that the Vehicle Manufacturer Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranty and were inherently defective, and the Vehicle Manufacturer Defendants improperly concealed material facts regarding their Class Vehicles.   Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

128.   Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to the Vehicle Manufacturer Defendants' improper conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make them whole.

129.   As a direct and proximate result of the Vehicle Manufacturer Defendants' breaches of their express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT III
## Breach of Implied Warranty of Merchantability
## Ala. Code §§ 7-2-314 and 7-2A-212
## (Against the Vehicle Manufacturer Defendants)

130.   Plaintiffs Rubio and Shields ("Plaintiffs," for purposes of the Alabama Class's claims) incorporate and re-allege paragraphs 1-98 as though fully set forth herein.

131.   Plaintiffs bring this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count) against the Vehicle Manufacturer Defendants.

132.   The Vehicle Manufacturer Defendants are and were at all relevant times merchants with respect to motor vehicles under Ala. Code §§ 7-2-104 and 7-2A-103.

133.   Pursuant to Ala. Code §§ 7-2-314 and 7-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

134.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the ACU Defect which causes airbag deployment failure during an accident.

135.  The Vehicle Manufacturer Defendants were provided notice of the ACU Defect through numerous complaints filed against them directly and through their dealers, as well as their own internal engineering knowledge.

136.  Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and the Vehicle Manufacturer Defendants' breaches of the warranty of merchantability.

137.  As a direct and proximate result of the Vehicle Manufacturer Defendants' breaches of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT IV
## Fraudulent Omission
## (Against all Defendants)

138.  Plaintiffs Rubio and Shields ("Plaintiffs," for purposes of the Alabama Class's claims) incorporate and re-allege paragraphs 1-98 as though fully set forth herein.

139.  Plaintiffs bring this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count) against all Defendants.

140.  Defendants were aware of the ACU Defect within the Class Vehicles when they marketed and sold the Class Vehicles to Plaintiffs and the other members of the Class.

141.   Having been aware of the ACU Defect within the Class Vehicles, and having known that Plaintiffs and the other members of the Class could not have reasonably been expected to know of the ACU Defect, Defendants had a duty to disclose the defect to Plaintiffs and the other members of the Class in connection with the sale or lease of the Class Vehicles.

142.   Defendants did not disclose the ACU Defect within the Class Vehicles to Plaintiffs and the other members of the Class in connection with the sale of the Class Vehicles.

143.   For the reasons set forth above, the ACU Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

144.   In purchasing the Class Vehicles, Plaintiffs and the other members of the Class reasonably relied on Defendants to disclose known material defects with respect to the Class Vehicles.

145.   Had Plaintiffs and the other members of the Class known of the ACU Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

146.   Through their omissions regarding the ACU Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and the other members of the Class to either purchase a Class Vehicle that they otherwise would

not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

147.   As a direct and proximate result of Defendants' omissions, Plaintiffs and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the ACU Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT V**
**Unjust Enrichment**
**(Against all Defendants)**

148.   Plaintiffs Rubio and Shields ("Plaintiffs," for purposes of the Alabama Class's claims) incorporate and re-allege paragraphs 1-98 as though fully set forth herein.

149.   Plaintiffs bring this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count) against all Defendants.

150.   Defendants have benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Defendants' concealment of the ACU Defect, and Plaintiffs and the other members of the Class have overpaid for these vehicles.

151.    Defendants have received and retained unjust benefits from Plaintiffs and the other members of the Class, and inequity has resulted.

152.    It is inequitable and unconscionable for Defendants to retain these benefits.

153.    Because Defendants concealed their fraud and deception, Plaintiffs and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Defendants' misconduct.

154.    Defendants knowingly accepted the unjust benefits of their wrongful conduct.

155.    As a result of Defendants' misconduct, the amount of their unjust enrichment should be disgorged and returned to Plaintiffs and the other members of the Class in an amount to be proven at trial.

**C.    Claims Brought on Behalf of the Maryland Class**

**COUNT VI**
**Violation of the Maryland Consumer Protection Act,**
**Md. Code Com. Law § 13-101, *et seq.***
**(Against all Defendants)**

156.    Plaintiff Wang ("Plaintiff," for purposes of the Maryland Class's claims) repeats and realleges paragraphs 1-98 as if fully set forth herein.

157.    Plaintiff brings this claim individually and on behalf of the other members of the Maryland Class (the "Class," for purposes of this Count) against all Defendants.

158.   Plaintiff is a person within the meaning of the Maryland Consumer Protection Act (the "Act") for all purposes therein.

159.   Defendants are persons within the meaning of the Act for all purposes therein.

160.   Defendants' conduct complained of herein constitutes acts, uses or employment by Defendants of unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations or knowing concealment, suppression, or omission of material facts with the intent that Plaintiff and the other Class members would rely upon such concealment, suppression, or omission in connection with the sale, marketing, and advertisement of the Class Vehicles. Defendants' conduct herein is an unfair practice that has the capacity to, and did, deceive consumers, as alleged herein.

161.   All of the conduct alleged herein occurred in the course of Defendants' business and is part of a pattern or generalized course of conduct.

162.   Defendants' actions, as complained of herein, constitute unfair or deceptive trade practices in violation of the Maryland Consumer Protection Act, as follows:

a.   Despite having knowledge of the defective nature of the Class Vehicles, Defendants failed to inform Plaintiff and the other Class members of the ACU Defect, thus deceiving them into purchasing the Class Vehicles;

41

b.      Defendants used knowing concealment, suppression, or omission of material facts with the intent that Plaintiff and the other Class members rely on them in their purchases of the Class Vehicles; and

c.      Defendants committed other deceptive or unfair trade practices described in Md. Code Com. Law § 13-301.

163.   Plaintiff and the other Class members were injured by Defendants' conduct. As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and the other Class members have suffered actual economic losses.

**COUNT VII**
**Breach of Express Warranty**
**Md. Code Com. Law § 2-313**
**(Against the Vehicle Manufacturer Defendants)**

164.   Plaintiff Wang ("Plaintiff," for purposes of the Maryland Class's claims) incorporates and re-alleges paragraphs 1-98 as though fully set forth herein.

165.   Plaintiff brings this Count individually and on behalf of the other members of the Maryland Class (the "Class," for purposes of this Count) against the Vehicle Manufacturer Defendants.

166.   The Vehicle Manufacturer Defendants are and were at all relevant times merchants with respect to the Class Vehicles.

42

167.   The Vehicle Manufacturer Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period.

168.   The Vehicle Manufacturer Defendants' express warranties formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the ACU Defect.

169.   The Vehicle Manufacturer Defendants breached their express warranty to repair defects in materials and workmanship within the Class Vehicles. The Vehicle Manufacturer Defendants have not repaired, and have been unable to repair, the Class Vehicles' materials and workmanship defects.

170.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect through numerous complaints filed against them directly and through their dealers, as well as their own internal engineering knowledge.

171.   Furthermore, the express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

172.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and

workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

173. Also, as alleged in more detail herein, at the time that the Vehicle Manufacturer Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranty and were inherently defective, and the Vehicle Manufacturer Defendants improperly concealed material facts regarding their Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

174. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to the Vehicle Manufacturer Defendants' improper conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

175. As a direct and proximate result of the Vehicle Manufacturer Defendants' breaches of their express warranties, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT VIII
## Breach of Implied Warranty of Merchantability
## Md. Code Com. Law § 2-314
## (Against the Vehicle Manufacturer Defendants)

176.   Plaintiff Wang ("Plaintiff," for purposes of the Maryland Class's claims) incorporates and re-alleges paragraphs 1-98 as though fully set forth herein.

177.   Plaintiff brings this Count individually and on behalf of the other members of the Maryland Class (the "Class," for purposes of this Count) against the Vehicle Manufacturer Defendants.

178.   The Vehicle Manufacturer Defendants are and were at all relevant times merchants with respect to motor vehicles under Md. Code Com. Law § 2-104.

179.   Pursuant to Md. Code Com. Law § 2-104, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

180.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the ACU Defect which causes airbag deployment failure during an accident.

181.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect through numerous complaints filed against them directly and through their dealers, as well as their own internal engineering knowledge.

182.   Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and the Vehicle Manufacturer Defendants' breach of the warranty of merchantability.

183.   As a direct and proximate result of the Vehicle Manufacturer Defendants' breach of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT IX
## Fraudulent Omission
## (Against all Defendants)

184.   Plaintiff Wang ("Plaintiff," for purposes of the Maryland Class's claims) incorporates and re-alleges paragraphs 1-98 as though fully set forth herein.

185.   Plaintiff brings this Count individually and on behalf of the other members of the Maryland Class (the "Class," for purposes of this Count) against all Defendants.

186.   Defendants were aware of the ACU Defect within Class Vehicles when they marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

187.   Having been aware of the ACU Defect within the Class Vehicles, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the ACU Defect, Defendants had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

188.   Defendants did not disclose the ACU Defect within the Class Vehicles to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

189.   For the reasons set forth above, the ACU Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

190.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Defendants to disclose known material defects with respect to the Class Vehicles.

191.   Had Plaintiff and the other members of the Class known of the ACU Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

192.   Through their omissions regarding the ACU Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would

not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

193.  As a direct and proximate result of Defendants' omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the ACU Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

### COUNT X
### Unjust Enrichment
### (Against all Defendants)

194.  Plaintiff Wang ("Plaintiff," for purposes of the Maryland Class's claims) incorporates and re-alleges paragraphs 1-98 as though fully set forth herein.

195.  Plaintiff brings this Count individually and on behalf of the other members of the Maryland Class (the "Class," for purposes of this Count) against all Defendants.

196.  Defendants have benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Defendants' concealment of the ACU Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

197.  Defendants have received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

198.  It is inequitable and unconscionable for Defendants to retain these benefits.

199.  Because Defendants concealed their fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Defendants' misconduct.

200.  Defendants knowingly accepted the unjust benefits of their wrongful conduct.

201.  As a result of Defendants' misconduct, the amount of their unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

**D.    Claims Brought on Behalf of the Ohio Class**

**COUNT XI**
**Violation of the Ohio Consumer Sales Practices Act,**
**Ohio Rev. Code Ann. §§ 1345.01, *et seq.***
**(Against all Defendants)**

202.  Plaintiffs Oliver and Shimko ("Plaintiffs," for purposes of the Ohio Class's claims) incorporate and re-allege paragraphs 1-98 as though fully set forth herein.

203.   Plaintiffs bring this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count) against all Defendants.

204.   Defendants, Plaintiffs, and the other Class members are "persons" within the meaning of Ohio Rev. Code Ann. § 145.01(B).   Defendants are "suppliers" as defined by Ohio Rev. Code Ann. § 1345.01(c).

205.   Plaintiffs and the other Class members are "consumers" as that term is defined in Ohio Rev. Code Ann. § 1345.01(D), and their purchase and lease of the Class Vehicles are "consumer transactions" within the meaning of Ohio Rev. Code Ann. § 1345.01(A).

206.   Ohio Rev. Code Ann. § 1345.02 prohibits unfair or deceptive acts or practices in connection with consumer transactions.

207.   In the course of Defendants' business, Defendants violated the Ohio Consumer Sales Practices Act ("CSPA") by selling Class Vehicles with the ACU Defect, leading to airbags failing to deploy during an accident, resulting in injury or death, or negligently concealing or suppressing material facts concerning the ACU Defect in the Class Vehicles.

208.   Defendants have committed unfair and deceptive acts in violation of the Ohio CSPA by knowingly placing into the stream of commerce the Class Vehicles with the ACU Defect.

50

209.   Moreover, Defendants have committed an unfair and deceptive act by knowingly concealing the ACU Defect in the Class Vehicles and failing to inform Plaintiffs and the other Class members of this defect.

210.   Defendants' unfair or deceptive acts or practices were likely to, and did, in fact, deceive consumers, including Plaintiffs and the other Class members, about the true reliability, dependability, efficiency, and quality of the Class Vehicles.

211.   Plaintiffs and the other Class members suffered ascertainable loss and actual damages as a direct result of Defendants' concealment of and failure to disclose material information, namely, the ACU Defect.  Plaintiffs and the other Class members who purchased or leased the Class Vehicles would not have done so, or would have paid significantly less, if the true nature of the Class Vehicles had been disclosed. Plaintiffs and the other Class members also suffered diminished value of their vehicles.

212.   Defendants are liable to Plaintiffs and the other Class members for compensatory damages, injunctive/equitable relief, and attorneys' fees pursuant to Ohio Rev. Code Ann. § 1345.09.

## COUNT XII
### Breach of Express Warranty,
### Ohio Rev. Code Ann. §§ 1302.26 and 1310.17
### (Against the Vehicle Manufacturer Defendant)

213.   Plaintiffs Oliver and Shimko ("Plaintiffs," for purposes of the Ohio Class's claims) incorporate and re-allege paragraphs 1-98 as though fully set forth herein.

214.   Plaintiffs bring this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count) against the Vehicle Manufacturer Defendants.

215.   The Vehicle Manufacturer Defendants are and were at all relevant times merchants with respect to the Class Vehicles.

216.   The Vehicle Manufacturer Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.

217.   The Vehicle Manufacturer Defendants' express warranties formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with the ACU Defect.

218.   The Vehicle Manufacturer Defendants breached their express warranties to repair defects in materials and workmanship within the Class Vehicles. The Vehicle Manufacturer Defendants have not repaired, and have been unable to repair, the Class Vehicles' materials and workmanship defects.

219. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect through numerous complaints filed against them directly and through their dealers, as well as their own internal engineering knowledge.

220. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

221. Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

222. Also, as alleged in more detail herein, at the time that the Vehicle Manufacturer Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranty and were inherently defective, and the Vehicle Manufacturer Defendants improperly concealed material facts regarding their Class Vehicles. Plaintiffs and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

223. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and

consequential damages have already been suffered due to the Vehicle Manufacturer Defendants' improper conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

224. As a direct and proximate result of the Vehicle Manufacturer Defendants' breaches of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XIII
### Breach of Implied Warranty in Tort
### (Against the Vehicle Manufacturer Defendant)

225. Plaintiffs Oliver and Shimko ("Plaintiffs," for purposes of the Ohio Class's claims) incorporate and re-allege paragraphs 1-98 as though fully set forth herein.

226. Plaintiffs bring this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count) against the Vehicle Manufacturer Defendants.

227. The Vehicle Manufacturer Defendants manufactured and sold the defective Class Vehicles to Plaintiffs and the other Class members.

228. The Class Vehicles are defective because they have the ACU Defect, which, among other things, causes airbags to fail to deploy during an accident.

229.   These defects existed at the time the Class Vehicles left the control of the Vehicle Manufacturer Defendants.

230.   Based upon these defects, the Vehicle Manufacturer Defendants have failed to meet the expectations of a reasonable consumer.  The Class Vehicles have failed in their ordinary, intended use, because they suffer from the ACU Defect, causing airbag deployment failure during an accident.

231.   The above-described defects in the Class Vehicles were the direct and proximate cause of economic damages to Plaintiffs and the other Class members.

**COUNT XIV**
**Fraudulent Omission**
**(Against all Defendants)**

232.   Plaintiffs Oliver and Shimko ("Plaintiffs," for purposes of the Ohio Class's claims) incorporate and re-allege paragraphs 1-98 as though fully set forth herein.

233.   Plaintiffs bring this Count individually and on behalf of the other members of the Ohio Class (the "Class," for purposes of this Count) against all Defendants.

234.   Defendants were aware of the ACU Defect when they marketed and sold the Class Vehicles to Plaintiffs and the other Class members.

235.   Having been aware of the ACU Defect, and having known that Plaintiffs and the other Class members could not have reasonably been expected to

55

know of this defect, Defendants had a duty to disclose the ACU Defect to Plaintiffs and the other Class members in connection with the sale or lease of the Class Vehicles.

236. Defendants did not disclose the ACU Defect to Plaintiffs and the other Class members in connection with the sale or lease of the Class Vehicles.

237. For the reasons set forth above, the ACU Defect comprises material information with respect to the sale or lease of the Class Vehicles.

238. In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members reasonably relied on Defendants to disclose known material defects with respect to the Class Vehicles. Had Plaintiffs and the other Class members known of the ACU Defect, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

239. Through their omissions regarding the ACU Defect, Defendants intended to induce, and did induce, Plaintiffs and the other Class members to purchase or lease a Class Vehicle that they otherwise would not have purchased, or to pay more for a Class Vehicle than they otherwise would have paid.

240. As a direct and proximate result of Defendants' omissions, Plaintiffs and the other Class members either paid too much for the Class Vehicles or would not have purchased the Class Vehicles if the ACU Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT XV**
**Unjust Enrichment**
**(Against all Defendants)**

241.  Plaintiffs Oliver and Shimko ("Plaintiffs," for purposes of the Ohio Class's claims) incorporate and re-allege paragraphs 1-98 as though fully set forth herein.

242.  Plaintiffs bring this Count individually and on behalf of the other members of the Ohio Class ("Class," for purposes of this Count).

243.  Defendants have benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Defendants' concealment of the ACU Defect, and Plaintiffs and the other members of the Class have overpaid for these vehicles.

244.  Defendants have received and retained unjust benefits from Plaintiffs and the other members of the Class, and inequity has resulted.

245.  It is inequitable and unconscionable for Defendants to retain these benefits.

246.  Because Defendants concealed their fraud and deception, Plaintiffs and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Defendants' misconduct.

247.  Defendants knowingly accepted the unjust benefits of their wrongful conduct.

248.   As a result of Defendants' misconduct, the amount of their unjust enrichment should be disgorged and returned to Plaintiffs and the other members of the Class in an amount to be proven at trial.

**E.    Claims Brought on Behalf of the West Virginia Class**

**COUNT XVI**
**Violation of the West Virginia Consumer Credit and Protections Act,**
**W. Va. Code §§ 46A-6-101, *et seq.***
**(Against all Defendants)**

249.   Plaintiff Rizzo ("Plaintiff," for purposes of the West Virginia Class's claims) repeats and realleges paragraphs 1-98 as if fully set forth herein.

250.   Plaintiff brings this claim individually and on behalf of the other members of the West Virginia Class (the "Class," for purposes of this Count) against all Defendants.

251.   The West Virginia Consumer Credit and Protections Act, W. Va. Code § 46A-6-104, states that, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

252.   By the conduct described in detail above and incorporated herein, Defendants engaged in unfair or deceptive acts in violation of the West Virginia Consumer Credit and Protections Act.

253.   Defendants' omissions regarding the ACU Defect, described above, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

254.   Defendants intended for Plaintiff and the other Class members to rely on Defendants' omissions regarding the ACU Defect.

255.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon Defendants' omissions of fact concerning the above-described ACU Defect, as evidenced by Plaintiff and the other Class members' purchases of Class Vehicles.

256.   Had Defendants disclosed all material information regarding the ACU Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

257.   Defendants' omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

258.   In addition to being deceptive, the business practices of Defendants were unfair because Defendants knowingly sold Plaintiffs and the other Class members defective Class Vehicles that are essentially unusable for the purposes for which they were sold.  The injuries to Plaintiff and the other Class members are

59

substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of Defendants' exclusive knowledge of the ACU Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

259.   As a direct and proximate result of Defendants' unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages.  Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the ACU Defect been disclosed.  Plaintiff and the other Class members also suffered diminished value of their vehicles.  Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under W. Va. Code § 46A-6-101, *et seq.*

### COUNT XVII
### Breach of Express Warranty
### W. Va. Code §§ 46-2-313 and 46-2A-210
### (Against the Vehicle Manufacturer Defendants)

260.   Plaintiff Rizzo ("Plaintiff," for purposes of the West Virginia Class's claims) incorporates and re-alleges paragraphs 1-98 as though fully set forth herein.

261.  Plaintiff brings this Count individually and on behalf of the other members of the West Virginia Class (the "Class," for purposes of this Count) against the Vehicle Manufacturer Defendants.

262.  The Vehicle Manufacturer Defendants are and were at all relevant times merchants with respect to the Class Vehicles.

263.  The Vehicle Manufacturer Defendants expressly warranted that they would repair or replace defects in material or workmanship free of charge if those defects became apparent during the warranty period.

264.  The Vehicle Manufacturer Defendants' express warranties formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with the ACU Defect.

265.  The Vehicle Manufacturer Defendants breached their express warranties to repair defects in materials and workmanship within the Class Vehicles.  The Vehicle Manufacturer Defendants have not repaired, and have been unable to repair, the Class Vehicles' materials and workmanship defects.

266.  The Vehicle Manufacturer Defendants were provided notice of the ACU Defect through numerous complaints filed against them directly and through their dealers, as well as their own internal engineering knowledge.

267.  Furthermore, the express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class

members whole and because the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

268.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

269.   Also, as alleged in more detail herein, at the time that the Vehicle Manufacturer Defendants warranted and sold the Class Vehicles they knew that the Class Vehicles did not conform to the warranty and were inherently defective, and the Vehicle Manufacturer Defendants improperly concealed material facts regarding their Class Vehicles.   Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

270.   Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to the Vehicle Manufacturer Defendants' improper conduct as alleged herein, and due to their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make them whole.

271.  As a direct and proximate result of the Vehicle Manufacturer Defendants' breaches of their express warranties, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XVIII
### Breach of Implied Warranty of Merchantability
### W. Va. Code §§ 46-2-314 and 46-2A-212
### (Against the Vehicle Manufacturer Defendant)

272.  Plaintiff Rizzo ("Plaintiff," for purposes of the West Virginia Class's claims) incorporates and re-alleges paragraphs 1-98 as though fully set forth herein.

273.  Plaintiff brings this Count individually and on behalf of the other members of the West Virginia Class (the "Class," for purposes of this Count) against the Vehicle Manufacturer Defendants.

274.  The Vehicle Manufacturer Defendants are and were at all relevant times merchants with respect to motor vehicles under W. Va. Code §§ 46-2-104 and 46-2A-103.

275.  Pursuant to W. Va. Code §§ 46-2-314 and 46-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

276.  The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were

defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the ACU Defect which causes airbag deployment failure during an accident.

277.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect through numerous complaints filed against them directly and through their dealers, as well as their own internal engineering knowledge.

278.   Plaintiff and the other Class members suffered injuries due to the defective nature of the Class Vehicles and the Vehicle Manufacturer Defendants' breaches of the warranty of merchantability.

279.   As a direct and proximate result of the Vehicle Manufacturer Defendants' breaches of the warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT XIX
## Fraudulent Omission
## (Against all Defendants)

280.   Plaintiff Rizzo ("Plaintiff," for purposes of the West Virginia Class's claims) incorporates and re-alleges paragraphs 1-98 as though fully set forth herein.

281.   Plaintiff brings this Count individually and on behalf of the other members of the West Virginia Class (the "Class," for purposes of this Count) against all Defendants.

282.   Defendants were aware of the ACU Defect within Class Vehicles when they marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

283.   Having been aware of the ACU Defect within the Class Vehicles, and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the ACU Defect, Defendants had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

284.   Defendants did not disclose the ACU Defect within the Class Vehicles to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

285.   For the reasons set forth above, the ACU Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

286.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Defendants to disclose known material defects with respect to the Class Vehicles.

287.   Had Plaintiff and the other members of the Class known of the ACU Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

288.   Through their omissions regarding the ACU Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

289.   As a direct and proximate result of Defendants' omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the ACU Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT XX**
**Unjust Enrichment**
**(Against all Defendants)**

290.   Plaintiff Rizzo ("Plaintiff," for purposes of the West Virginia Class's claims) incorporates and re-alleges paragraphs 1-98 as though fully set forth herein.

291.   Plaintiff brings this Count individually and on behalf of the other members of the West Virginia Class (the "Class," for purposes of this Count) against all Defendants.

292.   Defendants have benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Defendants' concealment of the ACU Defect, and Plaintiff and the other members of the Class have overpaid for these vehicles.

293.   Defendants have received and retained unjust benefits from Plaintiff and the other members of the Class, and inequity has resulted.

294.   It is inequitable and unconscionable for Defendants to retain these benefits.

295.   Because Defendants concealed their fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Defendants' misconduct.

296.   Defendants knowingly accepted the unjust benefits of their wrongful conduct.

297.   As a result of Defendants' misconduct, the amount of their unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

## VIII.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and the Classes, and award the following relief:

- An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Classes, and Plaintiffs' counsel as counsel for the Classes;

- An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful and unfair business conduct and practices alleged herein;

- Appropriate injunctive and equitable relief, including a recall of all Class Vehicles and return of monies paid for the Class Vehicles;

- A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

- An order awarding costs, restitution, disgorgement, punitive damages, statutory damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss, diminished value and out-of-pocket costs in an amount to be determined at trial;

- An order awarding any applicable statutory and civil penalties;

- An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

- An award of costs, expenses, and attorneys' fees as permitted by law; and

- Such other or further relief as the Court may deem appropriate, just, and equitable.

## IX.   **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: May 3, 2019

Respectfully submitted,

*/s/ Gregory D. Hanley*
Gregory D. Hanley (P51204)
Jamie K. Warrow (P61521)
Edward F. Kickham Jr. (P70332)
**KICKHAM HANLEY PLLC**
32121 Woodward Avenue, Suite 300
Royal Oak, Michigan  48073
Telephone:  248-544-1500
ghanley@kickhamhanley.com

*/s/ W. Daniel "Dee" Miles, III*
W. Daniel "Dee" Miles, III
H. Clay Barnett, III
Christopher D. Baldwin
**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama  36104
Telephone:  334-269-2343
Dee.Miles@BeasleyAllen.com
Clay.Barnett@BeasleyAllen.com
Chris.Baldwin@BeasleyAllen.com

*/s/ Adam J. Levitt*
Adam J. Levitt
John E. Tangren
Daniel R. Ferri
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com

Benjamin L. Bailey (*admission pending*)
Jonathan D. Boggs (*admission pending*)
Eric B. Snyder (*admission pending*)
**BAILEY GLASSER LLP**
209 Capitol Street
Charleston, West Virginia  25301
Telephone:  304-345-6555
bbailey@baileyglasser.com
jboggs@baileyglasser.com
esnyder@baileyglasser.com


*/s/ Joseph G. Sauder*
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
**SAUDER SCHELKOPF LLC**
555 Lancaster Avenue
Berwyn, Pennsylvania  19312
Telephone:  888-711-9975
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com

***Counsel for Plaintiffs and the Proposed Classes***